UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

---

| | |
|---|---|
| **GOLDEN BEAR INSURANCE COMPANY,** | |
| Plaintiff, | 3:25-cv-12739-MGL |
| v. | **COMPLAINT FOR DECLARATORY JUDGMENT** |
| **SATO ENTERPRISES, INC. d/b/a TSUBAKI RESTAURANT;** and **O'NEIL COURT JCBS, LLC d/b/a THE SHOPS OF O'NEIL COURT,** | |
| Defendants. | |

---

Plaintiff, GOLDEN BEAR INSURANCE COMPANY ("Golden Bear"), by its counsel, TEAGUE CAMPBELL DENNIS & GORHAM LLP files this Complaint for Declaratory Judgment against SATO ENTERPRISES, INC. d/b/a TSUBAKI RESTAURANT ("Sato") and O'NEIL COURT JCBS, LLC d/b/a THE SHOPS OF O'NEIL COURT ("O'Neil") (collectively, "Defendants") and in support thereof, alleges as follows:

### Nature of Action

1. Golden Bear brings this coverage action against Defendants seeking a declaration that $25,000 is the maximum limit of insurance available under a policy of insurance issued by Golden Bear to Sato in connection with a lawsuit filed against Defendants alleging Defendants are liable for injuries arising from a shooting that took place in the parking lot of Tsubaki Restaurant Lounge & Karaoke ("the Bar"), a karaoke bar and restaurant located in a shopping center called The Shops at O'Neil Court ("the Shopping Center").

**Parties**

2. Golden Bear is a California insurance company with its principal place of business located in Stockton, California.

3. Sato is a South Carolina corporation with its principal place of business located in Columbia, South Carolina.

4. O'Neil is a South Carolina limited liability company with its principal place of business in Columbia, South Carolina.

5. Upon information and belief, John C.B. Smith, Jr. is O'Neil's sole member and is a resident of Florida.

**Jurisdiction and Venue**

6. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C § 1332 in that the amount in controversy exceeds $75,000, exclusive of interest and costs, and the dispute is between citizens of different states.

7. Jurisdiction is further appropriate because this is an action for declaratory judgment pursuant to 28 U.S.C. § 2201.

8. An actual case and controversy of a justiciable nature exists between the parties involving the rights and obligations under a policy of insurance issued by Golden Bear to Soto.

9. Venue is proper in this Court pursuant to 28 U.S.C. §1391(a) and 28 U.S.C. § 1391(b) in that a substantial part of the events or omissions giving rise to this claim occurred in this judicial district, and because Defendants reside in this judicial district.

**Factual Background**

**The Underlying Lawsuit**

10.     On May 1, 2023, Yolanda Cora ("Yolanda") and Jacob Cora ("Jacob") filed a lawsuit in the Court of Common Pleas for Richland County, South Carolina seeking damages arising out of injuries they sustained in a shooting that took place on August 1, 2021. That lawsuit, which is the subject of this declaratory judgment action, is pending under case no. 2023-CP-40-02223 and is referred to herein as the "Underlying Lawsuit." A true and correct copy of the operative complaint in the Underlying Lawsuit is attached hereto as **Exhibit A.**

11.     The Underlying Lawsuit alleges Yolanda and Jacob were business invitees at the Bar, a karaoke bar and restaurant owned and operated by Sato and located within the Shopping Center owned, operated and managed by O'Neil. *See* Ex. A at ¶¶ 1-2.

12.     The Underlying Lawsuit alleges that while inside the Bar, another customer began harassing Yolanda and Jacob, including inappropriately touching Yolanda, which prompted a verbal altercation between the customer, Yolanda and Jacob. *See* Ex. A at ¶ 3.

13.     The Underlying Lawsuit alleges Yolanda and Jacob, fearing for their safety, attempted to leave the Bar by exiting the Bar into the parking lot. *See* Ex. A at ¶ 5.

14.     The Underlying Lawsuit alleges that once Yolanda and Jacob were in the parking lot, Yolanda and Jacob were again confronted by the customer who had also exited the Bar and who continued to harass and intimidate Yolanda and Jacob in the parking lot. *See* Ex. A at ¶ 6.

15.     The Underlying Lawsuit alleges that at the same time and place, a friend of the customer, Jaquan Leon King ("King"), was armed with a gun and was waiting in the parking lot of the Shopping Center and that during the course of this continuing harassment and altercation, King drew his weapon and shot both Yolonda and Jacob. *See* Ex. A at ¶¶ 7-8.

16. The Underlying Lawsuit alleges Defendants did nothing to protect Yolanda and Jacob, and, as a result, Yolanda and Jacob were shot and suffered severe injuries. *See* Ex. A at ¶ 15.

17. The Underlying Lawsuit alleges, *inter alia,* Defendants failed to provide adequate security and surveillance on the premises, permitted or otherwise ignored criminal activity on the premises, failed to properly train employees to recognize and correct dangerous conditions and risks to invitees, failed to have adequate patrols on the premises to deter dangerous activity, failed to remove dangerous persons from the premises, failed to protect Yolanda and Jacob from foreseeable harm caused by other patrons, and overserved the customer or other persons, which ultimately led to the shooting and injuries to Yolanda and Jacob. *See* Ex. A at ¶ 29.

18. The Underlying Lawsuit demands compensatory and punitive damages against Defendants based on theories of negligence and willful misconduct, malice, fraud, wantonness, oppression or an entire want of care which would raise the presumption of conscious indifference to consequences.

## **The Policy**

19. Golden Bear issued liability insurance policy no. GBL 200001-00 to Sato for the policy period of January 6, 2021 to January 6, 2022 (the "Policy"). A true and correct copy of the Policy is attached hereto as **Exhibit B**.

20. The declarations page of the Policy states that the limits of insurance for commercial general liability coverage are $1,000,000 per occurrence, subject to a $2,000,000 aggregate.

21. The declarations page of the Policy states that the limits of insurance for liquor liability coverage are $1,000,000 each common cause, subject to a $1,000,000 aggregate.

22.     The declarations page of the Policy states that the limits of insurance for assault and battery liability coverage (defense outside) are $25,000 for commercial general liability coverage each occurrence, $25,000 for liquor liability each common cause, and subject to a combined general liability and liquor liability aggregate of $50,000.

23.     For coverage under the general liability coverage portion of the Policy, the Policy provides that Golden Bear "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies" and that the Policy applies to "bodily injury" and "property damage" only if "the 'bodily injury' or 'property damage' is caused by an 'occurrence' that takes place in the 'coverage territory'."

24.     For coverage under the liquor liability coverage portion of the Policy, the Policy provides that Golden Bear "will pay those sums that the insured becomes legally obligated to pay as damages because of 'injury' to which this insurance applies if liability for such 'injury' is imposed on the insured by reason of the selling, serving or furnishing of any alcoholic beverage."

25.     The Policy defines the term "injury" to mean "damages because of 'bodily injury' and 'property damage', including damages for care, loss of services or loss of support."

26.     The Policy defines the term "bodily injury" to mean "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time."

27.     The Policy defines the term "occurrence" to mean "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

28.     The Policy is amended by an endorsement that adds an assault and battery exclusion. The Exclusion – Assault & Battery Endorsement (GBR 212 02/14) states as follows:

> **This endorsement modifies insurance provided under the following:**
>
> COMMERCIAL GENERAL LIABILITY COVERAGE PART
> LIQUOR LIABILITY COVERAGE PART

A. COMMERCIAL GENERAL LIABILITY COVERAGE PART, SECTION I - COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions, a. Expected or Intended Injury and LIQUOR LIABILITY COVERAGE PART, SECTION I - LIQUOR LIABILITY COVERAGE, 2. Exclusions, a. Expected or Intended Injury are replaced by the following:

   a. Expected or Intended Injury

   "Bodily injury" or "property damage" expected or intended from the standpoint of the insured.

B. The following exclusion is added as an item to the COMMERCIAL GENERAL LIABILITY COVERAGE PART, SECTION I - COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions; COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY, 2. Exclusions; COVERAGE C, MEDICAL PAYMENTS, 2. Exclusions, and to the LIQUOR LIABILITY COVERAGE PART, SECTION I - LIQUOR LIABILITY COVERAGE, 2. Exclusions:

   This insurance does not apply to claims or "suits" to recover damages for "bodily injury," or "property damage," "personal and advertising injury," or medical payments arising from any of the following acts, allegations, or causes of action:

   1. Assault;
   2. Battery;
   3. Harmful or offensive contact between or among two or more persons;
   4. Apprehension of harmful or offensive contact between or among two or more persons;
   5. Threats by words or deeds;
   6. Unlawful restraint or false imprisonment;
   7. Negligent hiring or retention of any employee resulting in or pertaining to any act or allegation of any act identified in 1-6 above;
   8. Failure to supervise or train any employee resulting in or pertaining to any act or allegation of any act identified in 1-6 above;
   9. Negligent entrustment resulting in or pertaining to any act or allegation of any act identified in 1-6 above;
   10. Negligent rescue in the aiding or failing to aid any person from any act or allegation of any act identified in 1-6 above, even if the rescue was an independent cause of harm or alleged to be;
   11. Negligent maintenance of the premises resulting in or pertaining to any act or allegation of any act identified in 1-6 above;
   12. Any actual or alleged failure to prevent, halt, or bar any act identified in 1-6 above, or

13. Indemnity for any act identified in 1-6 above.

The above acts, allegations, or causes of action shall not be deemed an "occurrence" and we have no duty to defend or indemnify an insured regardless of the degree of culpability or intent and without regard to:

1. Whether damages sought are for "bodily injury," "property damage," "personal injury," or "advertising injury";
2. The intent or culpability of an insured, an employee, or "third party";
3. Whether the claim, demand, or suit alleges that an insured acted directly or indirectly to cause damage;
4. Whether the claim, demand, or suit alleges that liability is based upon the doctrine of respondent superior;
5. Whether the claim, demand, or suit alleges that the insured trained, instructed, directed, influenced, or controlled its employees or "third parties" in such a manner so as to cause damage or danger;
6. Whether the acts, allegations, or causes of action identified above occurred on or off the insured's jobsite or designated premises or premises owned, occupied, leased or rented by the insured;
7. Whether the claim, demand, or suit alleges that the insured or his officers, employees, or agents failed to prevent, bar or halt any conduct which is the basis of any act, allegation, or cause of action listed in Section B, items 1-13 above, or
8. Whether or not the claim, demand, or suit alleges indemnity is owed pursuant to a contract.

C. This exclusion also applies to any claims, demands, or suits by any other person, firm, estate, entity or organization asserting rights derived from, or contingent upon, any person asserting a claim excluded by Section B, items 1-13 above.

D. This exclusion applies to all damages to persons or property, regardless of the damages alleged, claimed, stipulated or awarded, including costs and fees.

29. The Exclusion – Assault & Battery Endorsement defines the term "third party" to include "agents, independent contractors, sub-contractors, patrons, customers, lessors or lessees, security personnel, or any other persons lawfully or unlawfully on the insured's designated premise."

30. King, who shot Yolanda and Jacob and caused their injuries, qualifies as a "third party" as that term is defined in the Policy.

7

31. The Policy is amended by a Limited Assault & Battery Coverage Endorsement (GBR 302 02/14). The Limited Assault & Battery Coverage Endorsement provides as follows:

**This endorsement modifies your policy under the following:**

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART

In consideration of the additional premium paid, we agree to afford coverage as stated below:

A. The specific coverage excluded under GBR 212 (02/14) is reinstated subject to the following terms, conditions and the limits of insurance stated below.

  1. We will pay no more than the applicable limit set forth below for sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" for coverage excluded under GBR 212 (02/14). The applicable limit in this form is the most we will pay regardless of:

     i. The amount of any demand for indemnity;
     ii. The number of insureds;
     iii. The number of claims or "suits" brought against you, or
     iv. The limits stated in the Declarations.

B. Limits:

| | |
|---|---|
| Commercial General Liability | |
| Assault & Battery Each "Occurrence" Limit | $25,000 |
| | |
| Liquor Liability | |
| Assault & Battery Each "Common Cause" Limit | $25,000 |
| | |
| "Combined Assault & Battery Aggregate Limit" | $50,000 |

The limits above are not in addition to the limits stated in the Declarations. However, any indemnity payment made pursuant to this endorsement will reduce the applicable Limit of Insurance shown in the Declarations.

The "Combined Assault & Battery Aggregate Limit" is the most we will pay for coverage under this endorsement regardless of the number of claims or "suits" brought against you arising out of more than one "occurrence" and/or "common cause."

"Common Cause" means any claim, demand, or "suit" for injuries sustained by one or more persons as a result of the providing of alcoholic beverages.

All other terms, conditions, exclusions, limitations and definitions of this policy remain in full force and unchanged.

**Golden Bear Agrees to Provide a Defense Subject to Reservation of Rights**

32. Sato reported the Underlying Lawsuit to Golden Bear under the Policy.

33. On May 10, 2025, O'Neil tendered its defense and indemnity for the Underlying Lawsuit to, in part, Sato and Golden Bear.

34. By letter dated June 9, 2025, Golden Bear acknowledged notice of the Underlying Lawsuit and agreed to provide a defense to Sato in the Underlying Lawsuit, subject to a reservation of rights. A true and correct copy of the June 9, 2025, reservation of rights letter is attached hereto as **Exhibit C**.

35. By letter dated June 9, 2025, Golden Bear acknowledged notice of the Underlying Lawsuit and agreed to provide a defense to O'Neil in the Underlying Lawsuit, subject to a reservation of rights. A true and correct copy of the June 9, 2025, reservation of rights letter is attached hereto as **Exhibit D**.

36. The June 9, 2025, reservation of rights letters stated that indemnity coverage available to Defendants under the Policy for the Underlying Lawsuit was limited to the $25,000 Assault & Battery Each "Occurrence" Limit of the Policy and/or the $25,000 Assault & Battery Each "Common Cause" Limit of the Policy and is further subject to the "Combined Assault & Battery Aggregate" Limit of $50,000 of the Policy.

37. The June 9, 2025, reservation of rights letters stated that Golden Bear may seek a judicial determination relating to the applicable limits of insurance and further requested that Defendants sign a Stipulation of Coverage to confirm Defendants' agreement that indemnity

9

coverage available to Defendants under the Policy for the Underlying Lawsuit is limited to the $25,000 Assault & Battery Each "Occurrence" limit (applicable to the Commercial General Liability Coverage part of the Policy) and/or the $25,000 Assault & Battery Each "Common Cause" limit (applicable to the Liquor Liability Coverage part of the Policy) and is further subject to the $50,000 "Combined Assault & Battery Aggregate Limit."

38.     By email dated August 15, 2025, counsel for Sato responded that Sato "is not willing to sign the stipulation at this time." A true and correct copy of Sato's counsel's email is attached as **Exhibit E**.

39.     As of the date of the filing of this lawsuit, O'Neil has not responded to counsel for Golden Bear and has not executed the Stipulation of Coverage.

### COUNT I
### Declaratory Judgment – The $50,000 Combined Assault & Battery Aggregate Limit under the Limited Assault & Battery Coverage Endorsement is the Maximum Indemnity Coverage Available to Defendants for the Underlying Lawsuit

40.     Golden Bear repeats, reiterates, and realleges each and every allegation of the preceding paragraphs as if set forth herein, verbatim and fully at length.

41.     The Policy's Exclusion – Assault & Battery Endorsement excludes coverage for claims or "suits" to recover damages for "bodily injury" arising from enumerated acts, allegations or causes of action, including but limited to assault, battery, harmful or offensive contact between or among two or more persons, apprehension of harmful or offensive contact between or among two or more persons, or threats by words or deeds.

42.     The Policy's Exclusion – Assault & Battery Endorsement further excludes coverage for, *inter alia,* claims or "suits" to recover damages for "bodily injury" arising from (1) negligent hiring or retention of any employee resulting in or pertaining to any act or allegations of assault, battery, harmful or offensive contact between or among two or more persons, apprehension of

10

harmful or offensive contact between or among two or more persons, or threats by words or deeds, (2) the failure to supervise or train any employee resulting in or pertaining to any act or allegation of any act of assault, battery, harmful or offensive contact between or among two or more persons, apprehension of harmful or offensive contact between or among two or more persons, or threats by words or deeds; (3) negligent rescue in the aiding or failing to aid any person from any act or allegation of any act of assault, battery, harmful or offensive contact between or among two or more persons, apprehension of harmful or offensive contact between or among two or more persons, or threats by words or deeds; (4) negligent maintenance of the premises resulting in or pertaining to any act or allegation of any act of assault, battery, harmful or offensive contact between or among two or more persons, apprehension of harmful or offensive contact between or among two or more persons, or threats by words or deeds; and (5) any actual or alleged failure to prevent, halt or bar any act or allegation of any act of assault, battery, harmful or offensive contact between or among two or more persons, apprehension of harmful or offensive contact between or among two or more persons, or threats by words or deeds.

43.     The Policy's Exclusion – Assault & Battery Endorsement further states that Golden Bear owes no obligation with respect to the acts, allegations or causes of action identified in Paragraphs 41 and 42 above, and as set forth in the full in the Exclusion – Assault & Battery Endorsement, regardless of the degree of culpability or intent, and without regard to (1) whether the damages sought are for "bodily injury," "property damage," "personal injury" or "advertising injury;" (2) the intent or culpability of an insured, an employee, or a "third party;" (3) whether the claim, demand or suit alleges that liability is based upon the doctrine of respondeat superior, (4) whether the claim, demand or suit alleges that an insured trained, instructed, directed, influenced or controlled its employees or "third parties" in such a manner so as to cause damage or danger,

(5) whether the acts, allegations or causes of action occurred on or off the insured's jobsite or designated premises or premises owned, occupied, leased or rented by the insured; (6) whether the claim, demand or suit alleges that the insured or his officers, employees or agents failed to prevent, bar or halt any conduct which is the basis of any act, allegation or cause of action of assault, battery, harmful or offensive contact between or among two or more persons, apprehension of harmful or offensive contact between or among two or more persons, or threats by words or deeds.

44. The Policy's Exclusion – Assault & Battery Endorsement further states that it applies to any claims, demands or suits by any other person, firm, estate, entity or organization asserting rights derived from or contingent upon any person asserting a claim excluded by the Exclusion – Assault & Battery Endorsement, and applies to all damages to persons or property, regardless of the damages alleged, claimed, stipulated or awarded, including costs and fees.

45. The Policy's Limited Assault & Battery Coverage Endorsement reinstates coverage for claims or "suits" to recover damages for "bodily injury" arising from the acts, allegations or causes of action excluded by the Exclusion – Assault & Battery Endorsement, regardless of (1) the amount of any demand for indemnity, (2) the number of insureds and (3) the limits stated in the Policy's Declarations.

46. The Underlying Lawsuit alleges King – a "third party" under the Exclusion – Assault & Battery Endorsement – drew a weapon and shot both Yolanda and Jacob, causing severe and life-threatening injuries.

47. The Underlying Lawsuit alleges claims against Defendants to recover for "bodily injury" arising from the acts, allegations or causes of action identified in the Exclusion – Assault & Battery Endorsement.

48. The Limited Assault & Battery Coverage Endorsement applies to the Underlying Lawsuit and the $50,000 "Combined Assault & Battery Aggregate" Limit of the Policy applies and is the maximum amount of insurance available to Defendants under the Policy for the Underlying Lawsuit.

49. Defendants have refused to acknowledge that the Policy's $50,000 "Combined Assault & Battery Aggregate" Limit is the maximum limit of insurance available with respect to the Underlying Lawsuit.

50. An actual and justiciable controversy has arisen between Golden Bear on the one hand, and Defendants on the other, concerning the obligations and scope of coverage available under the Policy with regard to the Underlying Lawsuit.

51. A judicial declaration is necessary and appropriate at this time so Golden Bear can ascertain the extent of its indemnity obligation under the Policy with respect to the Underlying Lawsuit. A judicial declaration of the parties' rights and obligations under the Policy will obviate further disputes and terminate the uncertainty and controversy which has given rise to this proceeding.

WHEREFORE, Golden Bear respectfully requests that this Honorable Court declare and adjudicate the rights and liabilities of the parties under the Policy and (1) declare that the Limited Assault & Battery Coverage endorsement in the Policy applies to the Underlying Lawsuit; (2) declare that the $50,000 "Combined Assault & Battery Aggregate" Limit set forth in the Policy's Limited Assault & Battery Coverage Endorsement is the maximum limit of insurance available to Defendants for Underlying Lawsuit; and (3) provide such other and further relief as this Court may deem just and equitable.

Dated: September 29, 2025

        Respectfully Submitted,

        */s/ Peter Dworjanyn*
        Peter Dworjanyn
        Federal Bar No. 6289
        Teague Campbell Dennis & Gorham, LLP
        117 Cherry Street N.
        Asheville, NC 28801
        Telephone:     919.719.4711
        Email: pdworjanyn@teaguecampbell.com

        *Counsel for Golden Bear Insurance Company*